***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments on appeal. The appealing party has not shown good ground to receive further evidence or to amend the holding of the Deputy Commissioner. The Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 16 May 2002 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Commission has jurisdiction of the parties and the subject matter of this action.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. On or about February 1, 2000, defendant-employer employed more than three employees, and it and its employees were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
4. On or about February 1, 2000, there existed between Terrence Taylor and Alliance Food Service an employee-employer relationship.
5. On or about February 1, 2000, employer provided workers' compensation insurance coverage to its employees through its own insurance company.
6. On or about February 1, 2000, plaintiff was employed by the employer at an average weekly wage to be determined by a Form 22.
7. On or about February 1, 2000, plaintiff alleges he sustained an occupational disease arising out of and in the course of his employment with defendant-employer, said occupation resulting in carpal tunnel syndrome.
8. Plaintiff has not been paid temporary total disability from February 1, 2000 to the present.
9. The parties stipulated into evidence, as Stipulated Exhibit 1, a packet of plaintiff's medical records.
10. The parties stipulated into evidence, as Stipulated Exhibit 2, a list of plaintiff's absences.
11. The parties stipulated into evidence, as Stipulated Exhibit 3, a May 10, 2002 videotape of plaintiff performing his job.
12. The parties stipulated into evidence, as Stipulated Exhibit 4, a videotape of another employee performing a job.
13. The parties stipulated into evidence two pages of medical records from Dr. Whitmer of Carolina Regional Orthopedics, dated June 27, 2002 through September 12, 2002.
 ***********
Based upon the entire evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner in this matter, plaintiff was a 37 year-old male, born September 28, 1964. Plaintiff has a high school diploma and completed two years of college. Prior to his employment with defendant-employer, plaintiff was employed as a car salesman. He had no physical problems with his hands or arms prior to his employment with defendant-employer. In May 1997, plaintiff became employed with defendant-employer as a delivery driver delivering food products to various accounts.
2. Plaintiff drove tractor-trailer trucks and delivered various food products to various customers including restaurants, markets, and hospitals. These items included food stuffs as well as paper products. The number of cases and weight of each case varied daily as did the conditions under which plaintiff was required to unload the items and make delivery to each individual customer.
3. Certain delivery sites required that plaintiff lift heavier items including onions, cabbages, and potatoes while other stops required plaintiff to go up a set of steps to deliver the items.
4. Plaintiff made deliveries using a hand truck. Occasionally plaintiff was required to load the hand truck by hand at other times he was merely required to pick up a pallet with the hand truck and deliver the entire pallet without packing or unpacking the boxes. Plaintiff was required to repack the back of the truck occasionally to obtain items he needed that were not loaded in the order in which he would need them.
5. Plaintiff's job duties depict varied use of his hands including intermittent strenuous lifting, gripping and regripping. However, plaintiff's job duties varied greatly and he did not do any motion or task repeatedly over an extended period of time.
6. On February 1, 1999, plaintiff presented for treatment with Dr. Wesonga complaining of bilateral hand numbness and pain and was diagnosed with probable early carpal tunnel syndrome. Plaintiff was treated conservatively. Plaintiff continued to work and returned to Dr. Wesonga with continued complaints on March 7, 1999. Plaintiff was again treated conservatively and continued to work. He underwent nerve conduction studies on May 11, 1999, which revealed right-sided, moderately severe carpal tunnel syndrome and left-sided, mild carpal tunnel syndrome.
7. Plaintiff continued to work performing his regular job duties and returned to Dr. Wesonga two times in August 2000.
8. Plaintiff continued to experience problems while performing his regular duties and on March 8, 2001 plaintiff presented to Dr. Whitmer, an orthopedic surgeon. Dr. Whitmer diagnosed plaintiff with right-sided, severe carpal tunnel syndrome and left-sided, moderate to severe carpal tunnel syndrome.
9. Plaintiff continued to perform his regular duties and returned to Dr. Whitmer on August 9, 2001. At that time, plaintiff's symptoms had improved, and plaintiff was released to return as needed.
10. At the time of hearing before the Deputy Commissioner, plaintiff continued to perform his regular job duties and had not missed any time from work due to his carpal tunnel symptoms. However, plaintiff was experiencing pain in his wrist at the time of the hearing.
11. On June 27, 2002, following the hearing, plaintiff returned to Dr. Whitmer indicating that he had been having problems with pain in his hands for over two years with greater pain in the right than the left. Dr. Whitmer was again of the opinion that plaintiff had chronic, severe, right-sided carpal tunnel syndrome with some left-sided, moderate-severe carpal tunnel syndrome.
12. Plaintiff underwent a right-sided carpal tunnel release performed by Dr. Whitmer on August 2, 2002.
13. As of September 12, 2002, plaintiff was recovering well from his surgery and had been released by Dr. Whitmer to return to light duty work.
14. Based upon plaintiff's testimony, the testimony of numerous co-workers and the videotapes of the job which plaintiff performed and of a co-worker performing a similar job, it is clear that plaintiff's job duties did not involve repetitive motion or any activity performed on a continuous basis throughout the day. Furthermore, it is clear that plaintiff did not perform his job in an awkward position.
15. Dr. Whitmer was of the opinion that although plaintiff's job was not repetitive continuously that the amount of force affected plaintiff's risk. However, Dr. Whitmer did not give plaintiff specific restrictions for light duty during his treatment at any time prior to performing a carpal tunnel release on plaintiff. Dr. Whitmer also acknowledged that the activities which plaintiff performed on the videotape were performed intermittently and not repetitively. Furthermore, Dr. Whitmer was willing to give plaintiff permanent partial disability ratings without having seen plaintiff in approximately one year when plaintiff had not had significant symptoms the last time he had presented to Dr. Whitmer and when no surgery had been conducted upon plaintiff at that time.
16. Plaintiff's case was also reviewed by Dr. Edwards, an orthopedic surgeon. Dr. Edwards was of the opinion that the primary factors that caused carpal tunnel would be the rate of finger flexion (the repetitiveness and the amount of force inflexing those fingers). After reviewing plaintiff's testimony and the videotape of plaintiff performing his job, Dr. Edwards was of the opinion that plaintiff's job did not place him at an increased risk of developing carpal tunnel syndrome or significantly contribute to his developing of carpal tunnel syndrome than members of the general public not similarly employed. Dr. Edwards was further of the opinion that plaintiff's job did not cause or contribute to his development of carpal tunnel syndrome.
17. Dr. Edwards was of the opinion that plaintiff did use both hands in loading boxes but that his fingers are not moving in a flexed position and that such an occupation or task is not repetitive as far as the finger flexors are concerned and does not constitute an adequate strain to cause or contribute to carpal tunnel syndrome. Dr. Edwards was of this opinion even if the boxes which plaintiff loaded were 100 pounds. This is true because of the amount of time spent loading the boxes and the mechanism of moving the boxes as it relates to the hand posture and finger motion. Dr. Edwards was further of the opinion that plaintiff would have to perform this particular activity for hours each day with no breaks in order to develop carpal tunnel syndrome.
18. Dr. Edwards was further of the opinion that the fact that plaintiff disbursed his tasks with other tasks would mitigate against his occupation causing carpal tunnel syndrome. Finally, Dr. Edwards was of the opinion that he had never seen anyone with plaintiff's occupation get carpal tunnel syndrome caused by that occupation. He is further of the opinion that plaintiff's job was "just not repetitive at all." Dr. Edwards was of the opinion that even though there is some strain involved "it is not of the nature that would cause carpal tunnel."
19. Plaintiff does indeed suffer from carpal tunnel syndrome. However, plaintiff's carpal tunnel syndrome was not caused by or significantly contributed to by his job duties with defendant-employer.
20. Plaintiff's job with defendant-employer did not place him at an increased risk of developing carpal tunnel syndrome as compared to members of the general public not so employed.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff does indeed suffer from carpal tunnel syndrome. However, plaintiff's carpal tunnel syndrome was not caused by or significantly contributed to by his job duties with defendant-employer. N.C.G.S. §97-53(13).
2. Plaintiff's job with defendant-employer did not place him at an increased risk of developing carpal tunnel syndrome as compared to members of the general public not so employed. N.C.G.S. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim must be and the same is hereby DENIED.
2. Each side shall pay its own cost of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER